Eastern District of Kentucky
**F I L E D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

JUN 20 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-444-GWU

TRAVIS GRAY,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI).   The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

Case: 6:05-cv-00444-GWU Doc #: 11 Filed: 06/20/06 Page: 2 of 9 - Page ID#: 65

Gray

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

2

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

3

such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Travis Gray, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a depressive disorder and a personality disorder. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Gray retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he had no exertional limitations but would be restricted to only simple tasks in a routine, non-public, task oriented setting. (Tr. 282). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 282-3).

4

Gray

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's conditions.

Mr. Gray alleged disability due to nervousness and a dislike of being around other people. (Tr. 57). He testified that he had quit or had been fired from the only short-term jobs he ever had for this reason. (Tr. 268-70). He lived with his mother, but stayed in his bedroom all the time, and did no socializing or shopping. (Tr. 272-4). He received medication and obtained counseling from the Comprehensive Care Center (CCC), which helped somewhat. (Tr. 274-5).

Medical records in the transcript include reports of a psychiatric hospitalization from 1997, when the plaintiff was 13 years, at which time he was given diagnoses of attention deficit hyperactivity disorder and probable depression. (Tr. 109). He was discharged on Ritalin and given a current Global Assessment of Functioning (GAF) score of 70. (Id.). A GAF score of 70 reflects "mild" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34.

The earliest date that the plaintiff would be entitled to SSI benefits is the date of his application, February 25, 2003. (Tr. 46-8).

Records from after February, 2003, include a psychological evaluation by Dr. Kenneth Starkey on June 24, 2003, at which Mr. Gray described the same problems

5

Gray

about which he testified at the administrative hearing. (Tr. 119-22). Dr. Starkey

opined that taken jointly, his symptoms created moderate to severe personal

distress and impairment of social and occupational functioning and he was likely to

have moderate to severe difficulty managing the stresses of a day-to-day work

environment. (Tr. 122-3). He was also likely to have "moderate to severe" difficulty

maintaining the attention and pace necessary for completing tasks. (Tr. 123). Dr.

Starkey diagnosed a dysthymic disorder, oppositional defiant disorder, nicotine

dependence, a major depressive disorder, "provisional" borderline intellectual

functioning and "rule out" borderline personality disorder. (Tr. 124). He assigned

a GAF of 53, reflecting moderate difficulty in social, occupational, or school

functioning. DSM-IV-TR, p.34. Dr. Starkey opined that the plaintiff might be

rendered psychologically appropriate for vocational training or placement with formal

treatment, but without such treatment the prognosis for sustaining gainful

employment was "guarded to poor." (Tr. 124).

The ALJ rejected Dr. Starkey's report because it was completed prior to the

time the plaintiff began treatment at the CCC. (Tr. 17).

Records from the CCC show that Mr. Gray began receiving treatment

approximately in August, 2003 (Tr. 178), and that same month the staff psychiatrist,

Dr. Hayag, diagnosed a "severe" recurrent major depressive disorder with psychotic

features and "anxiety personality disorder," with a GAF of 58 (Tr. 173). By January,

2004, she had modified her diagnosis to "severe" major depressive disorder with psychosis and a personality disorder with dependent and avoidant traits. (Tr. 172, 238-9). The GAF was now given as 50. A GAF score of 50 represents serious impairment in social, occupational, or school functioning per the DSM-IV-TR. Various medications were prescribed, which the plaintiff subsequently reported that he did not find helpful, and Dr. Hayag tried different medications and doses in 2004, with the plaintiff subsequently stating that Seroquel was partially helpful. (Tr. 231-3). By September, 2004, Mr. Gray reported persistent auditory hallucinations and a depressed mood and irritability despite the medications, and told the psychiatrist that he was being compliant with taking them. (Tr. 229). In October, 2004, Mr. Gray was seen by a new psychiatrist and reported that he was sleeping well, but continued to feel sad, had low energy, isolated himself in his room, and tried to avoid social places. (Tr. 228). He felt that Wellbutrin had not helped him, and the psychiatrist prescribed Zoloft, asked that he continue to take Wellbutrin and Seroquel, and "increase activity." (Id.). No GAF score was given, and there was no indication of specific restrictions.

Finally, the plaintiff was evaluated by Dr. Blaine Pinaire, a psychologist, on January 5, 2005. Dr. Pinaire felt that Mr. Gray was not giving full effort during intellectual testing, and estimated low average intelligence, but he also diagnosed a depressive disorder and a personality disorder, in addition to "malingering," and

7

Gray

assigned a GAF of 54. (Tr. 251). Dr. Pinaire commented that employment in the public sector did not appear to be beyond Mr. Gray's capacities, although he might be irritable and have difficulty getting along with others. (Tr. 251-2). In terms of specific limitations, Dr. Pinaire opined that the plaintiff would have a "seriously limited but not precluded" ability to behave in an emotionally stable manner and to relate predictably in social situations. (Tr. 254-5).

As the plaintiff points out on appeal, the ALJ did not specifically discuss Dr. Pinaire's findings of a "seriously limited but not precluded" ability in these two areas, and no such restrictions were given to the VE. While Dr. Pinaire was only a one-time examiner, the ALJ rejected the opinion of the other one-time examiner, Dr. Starkey, and interpreted the CCC records as showing steady improvement, which is questionable in light of the indications that the plaintiff's daily functioning had not really changed since the beginning of treatment, and the fact that no new GAF score or other statement was given to indicate improvement. Neither Dr. Hayag nor her successor ever indicated an improvement in the GAF of 50, which, as noted earlier, reflects serious impairment. Moreover, the only non-examining sources to give limitations had based their opinions on only a review of a portion of the record prior to treatment at the CCC, primarily on Dr. Starkey's report (Tr. 148-4, 165-7), which the ALJ rejected. Essentially, no treating, consultative, or fully informed

8

Gray

reviewing source supports the ALJ's hypothetical factors.

The decision will be remanded for further consideration.

This the _____ 20 _____ day of June, 2006.

G. WIX UNTHANK,
Senior Judge

9